For some years prior to and at the time this suit was filed, the defendant, J. Lloyd St. Romain, in the Parish of Avoyelles, Louisiana, was engaged in producing for the market, honey bees. On November 1, 1945, he and F.M. Morgan, the intervenor herein, signed an instrument of which the following is a copy, to-wit:
"I, J. Lloyd St. Romain, of Moreauville, La. sell 350 colonies of bees, 800 mating hives and saw to F.M. Morgan of Hamburg, La., with the agreement that the bees will be delivered Nov. 1st, 1947 or will pay the sum of $1,982.88 for the consideration of $1,700.00; of which I have received today, Nov. 1st, 1945, $1,000.00, and balance to be given to me later in the regular course of business."
The $282.88 in excess of the principal sum of $1,700, as explained by the parties in their testimony, represented interest on the amount to November 1, 1947.
In the latter part of the year 1945, defendant acquired a patron by the name of Jean Louis Bechard, who lived in the City of Montreal, Canada, and who described himself as being engaged in the business of bee-keeping. The first business dealings between this man and defendant, so far as the record discloses, occurred in December, 1945. On the 12th day of that month, Bechard mailed to the defendant a bank draft for $504.50 to pay for bees to be delivered on a future date. Thereafter, bees of the value of $54.50 were delivered under this contract. Notwithstanding defendant's default in this respect, Bechard, during the months of February and March, 1947, made advances in cash to him, in four different amounts, aggregating $2,083.25, to pay the price of bees to be delivered on future dates. Not a bee was delivered under the agreements upon the faith of which plaintiff advanced said $2,083.25. After this signal default on defendant's part, and amicable demand, this suit was filed on June 5, 1947, to recover judgment for the total sum due plaintiff, $2,538.25. A writ of attachment was sued out on the grounds *Page 607 
that defendant had mortgaged, assigned or disposed of, etc., his property, rights and credit or some part thereof, with intent to defraud his creditors (particularly plaintiff), or had given an unfair preference to some of them; and that he had converted or was about to convert his property into money or evidences of debt with intent to place it beyond the reach of his creditors. Under the writ two hundred hives of bees were seized by the sheriff.
Defendant, in his answer, admits owing plaintiff the amount for which he sued, but denies that any cause or reason existed for the issuance of the writ of attachment. He avers that the instrument signed by him and Morgan on November 1st, 1945, is a bona fide contract. He adds that while title to the bees passed thereby it was also understood and agreed that should he pay to Morgan on or before November 1, 1947, the said amount of $1,982.88, the bees would then again become his property. In other words, he contends that he had the right and privilege of redeeming the property from the effects of the sale not later than November 1, 1947, by paying said amount. Defendant further denies that he willfully breached his obligations to plaintiff, but says that due to unforseen and uncontrollable events he was unable to live up to them. He prayed that there be judgment herein in accordance with law and the evidence and "as the court may deem right in the premises."
F.M. Morgan intervened in the suit and asserted ownership of the seized bees under the agreement of November 1, 1945, with defendant. He admits that it was part of the contract between them that the bees were to remain in defendant's possession and under his supervision until November 1, 1947, at which time, he avers, "actual delivery would be made and possession given" to him. He prays to be decreed the owner of the bees, that same be ordered delivered to him, and that the writ of attachment be dissolved.
Plaintiff's answer to the petition of intervention is not in the record. We conclude from oral arguments and briefs of both sides that plaintiff in his answer attacked the purported act of sale to intervenor as being a simulation outright, but if not of that character, that as an instrument of sale it was not effective as to third persons because the seller retained possession of the bees thereafter, the same as he had previously done.
The trial judge did not assign written reasons for his judgment but we are convinced he held that regardless of whether the instrument relied upon by intervenor was signed in good or bad faith, it was impotent as a sale because title to the bees did not thereby pass from St. Romain to the intervenor; and this being true, the property was subject to the pursuit of St. Romain's creditors. Judgment went for plaintiff with recognition of the writ of attachment. The intervenor only appealed.
Defendant and intervenor are neighbors. Intervenor has been engaged in the bee business longer than has the defendant. He testified that through his assistance defendant got into the business of producing and selling bees and that he often aided him in a financial way.
[1] Usually those who participate in the transfer of personal property do not reduce their agreements to writing, and when this method of evidencing the transfer of title is resorted to and the verity of the instrument is challenged by one having the right so to do, a court will not accept such instrument at its face value but will scrutinize the same and the actions of the parties thereto with the view of determining the true character of such instrument and the reasons motivating its execution.
The good faith of the parties in executing the embattled instrument is seriously challenged by the plaintiff. He argues that if intervenor actually advanced the money to defendant for the purposes contended, why should he not have taken a mortgage to secure payment of the indebtedness? He points to the fact that intervenor is a Justice of the Peace, has been so for many years and doubtless had knowledge of the business course, under such circumstances, to pursue to protect himself in the reimbursement of the amounts allegedly advanced to the defendant. These arguments are not without support in reason and inferences that logically arise from the record before us. However, we shall adjudicate the controversy on the assumption that the *Page 608 
instrument was signed by the parties in good faith and that intervenor did advance thereon at least $1,000.
It is certain the parties to the purported act of sale did not really intend that it be of that character. Granting that intervenor advanced the initial $1,000 (the record does not disclose that further advances were made), the subsequent acts and attitude of the parties clearly prove that the amount was to be reimbursed by the defendant through and by proceeds of future sales of bees. Anent this question Morgan testified:
"Well, to take actual possession, I didn't. He was to work the bees and buy the bees back."
Morgan and St. Romain do not in material respects agree with regard to the operative effect of the purported sale.
The instrument, on its face, sets at rest the question of delivery of possession. This was to happen on November 1, 1947, in the event of the failure to pay the $1,982.88. Therefore, defendant's possession of the bees underwent no change nor was such intended as a consequence of the execution of the instrument.
[2] The instrument here in controversy does not meet the requirements of the Civil Code that treat "Of the Power or Right of Redemption" in sales; Articles 2567-2588, inclusive. One of the indispensable essentials to the lawful confection of such an instrument is that actual, physical possession of the property involved pass to the purchaser. Latiolais v. Breaux,154 La. 1006, 98 So. 620.
[3] It is obvious that the use of the word "sell" in said instrument was improvident. To have more clearly expressed the intent of the parties the word "mortgage" should have been employed. The construction, as placed by the parties themselves upon the instrument over a period of nearly two years, unquestionably proves that the instrument was really designed to operate as a contract of security to protect Morgan for the amounts he advanced on the faith of it. This conclusion finds support in the fact that in every instance when the intervenor had opportunity to sell any part of the bees he referred the prospective purchaser to the defendant. In one instance, wherein a goodly portion of the bees was shipped to a purchaser, both parties participated in the sale, but the price thereof $700, went to the defendant.
Our conclusion, therefore, is that title to the bees did not pass to intervenor by virtue of the instrument herein discussed, and this being true, the bees were at all times the property of the defendant and were liable to seizure for his debts. The instrument not being of record, of course, was ineffective as to a seizing creditor and other third persons.
For the reasons herein assigned, the judgment appealed from is affirmed with costs.